# Illinois Official Reports

## Appellate Court

---

*Southern Wine & Spirits of Illinois, Inc. v. Steiner*,
2014 IL App (1st) 123435

---

| | |
|---|---|
| Appellate Court Caption | SOUTHERN WINE AND SPIRITS OF ILLINOIS, INC., Plaintiff-Appellant, v. PAUL STEINER and RICKY NELSON, a/k/a Ricky Lee Nelson, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3435 |
| Filed | March 31, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When defendants gave a personal guaranty to a wholesale wine distributor that they would pay for any debts incurred by the wine business they owned, the guaranty was enforceable by the distributor, but, when the distributor was purchased by plaintiff without defendants' knowledge and defendants' wine business started doing business with plaintiff and failed to pay plaintiff, the trial court did not err in dismissing plaintiff's complaint to enforce the guaranty against defendants individually, since the plain language of the guaranty did not permit assignment of the guaranty and, therefore, defendants were not liable to plaintiff under the guaranty. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-M1-1180202; the Hon. Sheryl A. Pethers, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael I. White, of Chicago, and Joshua Sachs, of Joshua Sachs & Associates, of Evanston, for appellant.

Marc S. Lichtman and Kara R. Eisen, both of Marc S. Lichtman & Associates, Ltd., of Chicago, for appellees.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Mason concurred in the judgment and opinion.

## OPINION

¶ 1 When Seneca wrote, "Vinum incendit iram" (Wine kindles wrath), litigation over a purchase of some $19,000 in liquor and other goods was not what he had in mind. The wrath kindled by wine in this case arose out of a personal guaranty executed by defendants, Paul R. Steiner and Ricky L. Nelson, to protect a wholesale wine distributor, Morand Brothers Beverage Company, d/b/a Romano Brothers Beverage Company. Defendants guaranteed they would pay Morand for any indebtedness incurred by 1989 Wine Partners, Inc., d/b/a Superior Wine Selections (Superior), a wine merchant that defendants owned and operated. Plaintiff Southern Wine & Spirits of Illinois, Inc., purchased Morand and all of its assets and later became a supplier to Superior. Years later, Superior purchased $19,080.49 in liquor and other goods from Southern and refused to make payment. Southern then filed a breach of contract complaint against defendants seeking to enforce the personal guaranty to Morand. Defendants filed a motion to dismiss, which the circuit court granted with prejudice, while also granting plaintiff leave to file an amended complaint against the corporate defendant. The court found that the personal guaranty defendants gave Morand was not assignable and thus Southern could not enforce it. The court also granted, in part, defendants' motion to strike, on hearsay grounds, a portion of an affidavit submitted by Southern.

¶ 2 Southern appeals the trial court's dismissal order arguing the guaranty is enforceable because: (1) the guaranty expressly states it is effective until defendants cancel or discontinue it, which they did not do; and (2) the assignment was not a material change that would discharge the guarantors' obligations. Southern also appeals the trial court's order on defendants' motion to strike, arguing the excised paragraphs fall under the business records exception to the hearsay rule. We affirm.

¶ 3                                    BACKGROUND

¶ 4 On May 7, 2001, defendants Steiner and Nelson (Guarantors), as corporate officers of Superior Wine Selections, submitted a credit application to Morand, a wholesale wine distributor. They also executed and delivered to Morand a personal guaranty that provided, in part:

"To induce you to sell merchandise and extend credit to 1989 Wine Partners, Inc., d/b/a Superior Wine Selections, a corporation, at the request of the undersigned, and because of the financial interest of the undersigned in said corporation, undersigned hereby unconditionally guarantee(s) the full and prompt payment when due of any and all indebtedness which may at any time and from time to time be incurred by said corporation *** to Romano Bros. Beverage Co for merchandise sold and delivered.

This guaranty shall be continuing, absolute and unconditional and shall remain in full force and effect until written notice of its discontinuance shall be actually received by Romano Bros. Beverage Co., 7575 S. Kostner, Suite 100, Chicago, Illinois, and also until any and all indebtedness existing before receipt of such notice shall be fully paid. The undersigned hereby expressly waive(s) the giving of notice to anyone of protest, dishonor, default or non-payment, or of the creation or extension of any guaranteed debt or of any security or collateral therefore, or of the acceptance of this GUARANTY, or of extensions of credit or indulgences hereunder, or of any alteration in the obligation or rights of any party to this instrument whatsoever.
***

This guaranty shall be binding on the undersigned, jointly and severally, and upon the legal heirs, legal representatives, successors, and assigns of the undersigned and each of them."

¶ 5    In 2002, Southern purchased all of the assets of Morand. In May 2003, unaware of the transaction between Morand and Southern, Superior began using Southern as a wholesale distributor. Between December 3 and December 17, 2010, Superior purchased $19,080.40 in liquor and other goods from Southern. When Superior failed to make payment and defendants refused to pay under the personal guaranty, Southern filed this breach of contract claim. Southern asserted the Guarantors never cancelled the personal guaranty they gave Morand and that Southern acquired the personal guaranty when it purchased Morand and all of its assets. Southern sought to enforce the guaranty to obtain full payment, along with interest, attorney fees and costs, as provided by the terms of the guaranty.

¶ 6    Steiner filed a counterclaim against Nelson asserting he sold 100% of his ownership in Superior to Nelson and Timothy O'Connell on September 3, 2001, under a stock sales agreement that provided Nelson and O'Connell would defend, indemnify, and hold Steiner harmless from any actions related to Superior.

¶ 7    On August 8, 2012, Nelson filed a motion to dismiss under section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)), which Steiner was permitted to join. The motion, supported by Nelson's sworn affidavit, acknowledged defendants executed a personal guaranty in favor of Morand but asserted defendants did not know Southern had purchased Morand and never executed a personal guaranty in favor of Southern. Defendants further asserted Superior never purchased anything from Morand and thus they incurred no risk as part of the original guaranty but that their risk increased dramatically when Superior began to purchase goods from Southern. Defendants contend this change in circumstances renders the guaranty unenforceable by Southern.

¶ 8    In response, Southern argued defendants never canceled or discontinued the guaranty with Morand, as required by its terms, and accordingly, the personal guaranty remained in effect. Southern also argued that contrary to defendants' contentions, Superior did purchase liquor from Morand and, therefore, defendants' risk level did not materially change or increase when

Superior began purchasing from Southern. In support, Southern submitted an affidavit from its credit manager, Fiona Furlong-Rycaz, stating that Superior purchased goods from Morand between 2001 and 2003. In paragraphs 9 and 10 of the affidavit, which are relevant to this appeal, Furlong-Rycaz stated:

> "9. I have reviewed the files of records of 1989 Wine Partners, Inc, d/b/a Superior Wine Selections which was guaranteed by the Defendants. Our records indicate that the Defendants never cancelled the Personal Guaranty of the Defendants.

> 10. The Purchase History of 1989 Wine Partners, Inc, d/b/a Superior Wine from May 1, 2001 to December 31, 2003 is attached hereto and made a part hereof as Exhibit A. 1989 Wine Partners, Inc, d/b/a Superior Wine had purchased goods from Moran [*sic*] Bros. Beverage Co, d/b/a Romano Broths [*sic*], from 2001 to 2003."

¶ 9 Attached to the affidavit were copies of invoices showing transactions from 2002 to 2004, allegedly between Superior and Morand, although Morand's name does not appear on the invoices.

¶ 10 The Guarantors filed a motion to strike the affidavit of Fiona Furlong-Rycaz on hearsay grounds, asserting that the affiant had no knowledge or familiarity with Morand's record-keeping, since she did not work for that company.

¶ 11 On October 17, 2012, the trial court entered an order granting defendants' motion to strike paragraphs 9 and 10 of plaintiff's affidavit as hearsay. The court also granted defendants' motion to dismiss the complaint with prejudice, but gave plaintiff leave to file an amended complaint as to the corporate defendant. Southern filed a timely notice of appeal from the order striking part of its affidavit and the order dismissing defendants.

¶ 12                                    ANALYSIS

¶ 13                               Motion to Dismiss

¶ 14 A section 2-619 motion admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. *Capeheart v. Terrell*, 2013 IL App (1st) 122517, ¶ 11. The question on appeal is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Id.* We review a trial court's dismissal under section 2-619 of the Code *de novo* (*Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)), noting that, even if the court dismissed on an improper ground, we may affirm the dismissal on any proper basis presented by the record. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004).

¶ 15 Southern contends the trial court erred in granting the motion to dismiss because the Guarantors are personally liable for Superior's debts by virtue of the guaranty they executed in favor of Morand in May 2001. Southern asserts the Guarantors could have cancelled the guaranty by providing written notice to Morand, but never did so; therefore, it was an asset Southern acquired from Morand along with all of the company's other assets. Defendants contend, however, that the plain language of the guaranty did not permit a transfer to another entity, and therefore, the trial court did not err.

¶ 16 A guarantor's liability depends on the guaranty contract. *Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 185 (1983). General principles of contract construction apply. *Id*. A guarantor has acquired status as a favorite of the law, and when construing liability the court

accords the guarantor the benefit of any doubts that may arise from the language of the contract. *Schiff v. Continental National Bank & Trust Co. of Chicago*, 255 Ill. App. 333, 340 (1930). Moreover, the scope of a guarantor's liability extends no further than that which the guarantor has agreed to accept. *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 403 (2011). Courts strictly construe guaranty agreements in favor of the guarantor, especially when the creditor prepared the guaranty agreement. *Id*. Where a guaranty is unequivocal, it must be construed according to the terms and language used, as it is presumed the parties meant what the language imports. *Farmers State Bank v. Doering*, 80 Ill. App. 3d 959, 961 (1980).

¶ 17 The guaranty given Morand provides that it "shall remain in full force and effect until written notice of its discontinuance shall be actually received by Romano Bros. Beverage Co." There is no evidence defendants provided written notice to Romano Bros. (Morand) to discontinue the guaranty. Indeed, defendants do not so claim. Instead, they assert that Morand could not have assigned or transferred the guaranty to Southern because its plain language did not permit an assignment or transfer. The absence of this language is not controlling, however, because the guaranty also does not prohibit a transfer or assignment. Thus, because the plain language of the guaranty provides no guidance on the issue, we look to how Illinois courts have determined whether a guaranty is assignable.

¶ 18 The general rule is that guaranties are not assignable. *Second National Bank of Peoria v. Diefendorf*, 90 Ill. 396, 407 (1878). But, this rule has not been applied mechanically. The facts of each case determine whether the policy underlying the rule applies. *Roels v. Drew Industries, Inc.*, 240 Ill. App. 3d 578, 581 (1992). Thus, an assignment of a guaranty will not release the guarantor unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated. *Id*. Hence, when a merger or consolidation involves a creditor-guarantee, the guarantor's discharge depends on a material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor. *Harris Trust & Savings Bank v. Stephans*, 97 Ill. App. 3d 683, 687 (1981) (citing *Essex International, Inc. v. Clamage*, 440 F.2d 547, 550 (7th Cir. 1971)).

¶ 19 Southern contends the transfer of the guaranty from Morand to it did not materially change defendants' obligations as guarantors or increase their risk, but only changed the party to whom payment was now required to be made. Southern asserts that obligations of both parties remained the same, namely, Southern distributed liquor to Superior and defendants continued purchasing, but instead of paying Morand, paid Southern. According to Southern, the Guarantors' risk level remained the same and the mere fact of an assignment is not a material enough change to discharge the Guarantors' obligations. For support, Southern relies on *Claude Southern Corp. v. Henry's Drive-In, Inc.*, 51 Ill. App. 2d 289 (1964). In that case, defendant personally guaranteed plaintiff, a sign company, it would pay its franchisees' monthly sign rental fees in the event of nonpayment. The sign company then assigned the rental agreements to a bank, which agreed that the rental agreements would be reassigned to the sign company for a fee in the event of a default by a franchisee. Defendant argued the sign company's assignment to the bank released it from its guaranties. The trial court agreed and entered a judgment in defendant's favor, but the appellate court reversed, finding the assignment to the bank was not a material alteration because the sign company continued to perform its duties under the contracts and only the direction of the payment was affected.

¶ 20    In *Chicago Exhibitors Corp. v. Jeepers! of Illinois*, *Inc.*, 376 Ill. App. 3d 599 (2007), a more recent case also relied on by Southern, defendants personally guaranteed the payment of rent and other obligations owed to plaintiff by a company owned and operated by defendants. Before trial, the circuit court granted plaintiff's motion *in limine* to prevent defendants from presenting evidence that amendments to the lease increased the risk they had assumed under the personal guaranty. In affirming the trial court, the appellate court found that modifications to the lease agreement, including a requirement that the tenant and its parent company provide financial statements to the landlord on request, a change in the venue for litigation, a waiver by the parties of their right to a jury trial, and agreement by the tenant that it did not have any defense, claim, or offset right against the landlord, were not material changes that released the guarantors for their personal guaranty. *Chicago Exhibitors*, 376 Ill. App. 3d at 607-08. This court found that none of the changes constituted a "material change" because they did not "alter[ ] the performance required by the tenant, such as the amount of rent owed under the lease, the terms of the lease, or the basic relationship between the tenant and landlord." *Id*. at 608.

¶ 21    Relying on *Claude* and *Chicago Exhibitors*, Southern seeks a finding that the guaranty's assignment did not constitute a material change. But, the facts here and in *Claude* and *Chicago Exhibitors* differ in several germane and key respects. First, in *Claude*, the defendant knew that the sign company was assigning the leases to the bank. Conversely, nothing here indicates that Steiner and Nelson knew their personal guaranty was purportedly assigned by Morand to Southern. More significantly, in *Claude* and in *Chicago Exhibitors*, the amount owed by the guarantors following the assignment either stayed the same or decreased slightly. Conversely, the amount Superior owed to Southern could vary from month to month, resulting necessarily in a fluctuation in the risk. While a variable risk is to be expected with a personal guaranty in a merchant-wholesaler relationship, because defendants were not aware that Morand had purportedly assigned the personal guaranty to Southern, defendants were not aware they were incurring any risk when Superior purchased goods from Southern. This constitutes a material change in the terms of the agreement defendants entered into with Morand.

¶ 22    We also agree with the trial court analysis that whether Superior ever purchased liquor from Morand has nothing to do with the question of whether the guaranty was assignable. Assuming Superior did purchase liquor from Morand before it was bought by Southern, defendants were fully aware that they had given a guaranty to Morand and therefore, knew they could be personally liable if Superior did not pay what it owed Morand. Years later, when Superior started buying liquor from Southern as a wholesale distributor, defendants did not know of any relationship between Southern and Morand or that Southern intended to stand in Morand's shoes regarding the guaranty in the event of a default. Given this lack of knowledge, defendants' risk went from a known to a complete unknown. Under these circumstances, the guaranty was not assignable and, hence, not enforceable by Southern against defendants. Therefore, we affirm the trial court's order dismissing the complaint.

¶ 23                              Motion to Strike Plaintiff's Affidavit

¶ 24    Southern contends the trial court erred in striking paragraphs 9 and 10 of Southern's affidavit in support of its response to defendants' motion to dismiss because business records are an exception to the hearsay rule. Illinois Supreme Court Rule 236(a), which codifies the business-records exception to the hearsay rule, provides as follows:

"(a) Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind." Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

¶ 25    "The theory upon which entries made in the regular course of business are admissible as an exception to the hearsay rule is that 'since their purpose is to aid in the proper transaction of the business and they are useless for that purpose unless accurate, the motive for following a routine of accuracy is great and the motive to falsify nonexistent.' " *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 414 (2005) (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 803.10, at 817 (7th ed. 1999)). Thus, Rule 236 requires only that the party tendering the record satisfy the foundation requirement of demonstrating that the record was made in the regular course of business and at or near the time of the transaction. Testimony of the custodian of records or another person familiar with the business and its mode of operation may establish the foundation for admitting records. A reviewing court will not disturb a trial court's decision regarding the admissibility of business records absent an abuse of discretion.

¶ 26    In her affidavit, Furlong-Rycaz states that she had custody of the business records relating to Superior's purchase history, which were attached to the affidavit, and determined that Superior had purchased goods from Morand from 2001 to 2003. But Southern failed to lay a sufficient foundation for admitting these business records. A review of the invoices shows that while Superior is identified as the purchaser, Morand's name does not appear as the seller. Further, Furlong-Rycaz does not explain in her affidavit how she was able to determine that the purchases made by Superior reflected on the invoices were made from Morand by, for example, averring that Morand maintained invoices in files according to purchaser. Therefore, because Southern failed to provide the necessary facts to lay a proper foundation for admitting the business records, the trial court did not abuse its discretion in striking paragraphs 9 and 10 of the affidavit.

¶ 27    But even if those business records were admitted by the trial court they would not change the outcome on the motion to dismiss. As noted, whether Superior purchased goods from Morand in 2003 and 2004, a purported assignment by Morand to Superior without defendants' knowledge was a material change in the agreement.

¶ 28    For the above reasons, we affirm the trial court's order granting defendants' motion to dismiss and its order striking paragraphs 9 and 10 of plaintiff's affidavit.

¶ 29    Affirmed.