NOTICE

Decision filed 05/08/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230876-U

NO. 5-23-0876

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ARROWWOOD INDEMNITY COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-SC-671 |
| | ) | |
| SALEEM THOMPSON, | ) | Honorable |
| | ) | Julia R. Gomric, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The order and judgment of the trial court is affirmed. The trial court did not abuse its discretion in admitting exhibits pursuant to the business records exception to the hearsay rule. The judgment in favor of the plaintiff was not against the manifest weight of the evidence.

¶ 2    The defendant, Saleem Thompson, appeals the September 19, 2023, order of the circuit court of St. Clair County, following a bench trial, that entered judgment against Thompson in the amount of $15,387.81 and in favor of the plaintiff, Arrowwood Indemnity Company (Arrowwood). For the reasons that follow, we affirm the trial court's order.

1

¶ 3                                I. BACKGROUND

¶ 4     On April 20, 2022, the plaintiff, Arrowwood, filed a two count verified small claims complaint against the defendant, Thompson. The complaint alleged that Thompson defaulted on two student loans.

¶ 5     On July 11, 2022, counsel for Thompson entered a special and limited appearance and filed a motion to quash service of summons and the complaint. On August 8, 2022, the trial court entered an order granting, in part, and denying, in part, the motion to quash. The order required the plaintiff to send a complete copy of the complaint to the defendant's attorney by September 1, 2022. The defendant was granted until October 1, 2022, to file a responsive pleading. On October 17, 2022, the trial court entered an order granting the defendant's motion to dismiss,[1] granting the plaintiff 21 days to file an amended complaint, and granting the defendant 21 days thereafter to respond to any amended complaint.

¶ 6     On November 9, 2022, the plaintiff filed an amended verified two count complaint. The amended complaint alleged, *inter alia*, that the plaintiff, Arrowwood, was a successor in interest to Guaranty National Insurance Company (Guaranty) and that Guaranty provided default insurance polices to various lenders, including those that provided student loans. Guaranty provided default insurance policies on the two student loans identified in the complaint that were obtained by Thompson. The following documents were attached as exhibits to the amended complaint: Group Exhibit A—affidavit of Linda Pettigrew and September 30, 2011, Bill of Sale, Assignment and Assumption Agreement between Citibank, N.A., and Discover Bank; Group Exhibit B—TuitionGard, Ltd. Insurance Certificate, two Arrowwood Indemnity Company Request for Claim Reimbursement Forms, and two Transfer of Ownership between Discover Student Loans-SLC and

_____

[1]The defendant's motion to dismiss the original complaint is not contained within the common law record on appeal.

2

Arrowwood Indemnity Company; Exhibit C—CitiAssist Loans for medical students application for Saleem Thompson and promissory note; Exhibit D—Arrowwood Lost or Missing Original Loan Document Affidavit regarding Truth in Lending document with attached illegible document; and Exhibit E—Affidavit of Indebtedness.

¶ 7 On November 14, 2022, the defendant filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). No additional pleadings were filed for approximately four months. On March 9, 2023, the plaintiff filed a motion for default judgment. This resulted in responses and a motion for sanctions to be filed by the defendant. The motion for default judgment was later withdrawn. On June 20, 2023, the plaintiff filed a response to the motion to dismiss.

¶ 8 On June 26, 2023, the trial court entered an order that denied the defendant's motion to dismiss the amended complaint and denied the motion for sanctions. The defendant was granted 20 days to answer the amended complaint. Further, the trial court set the matter for a bench trial on September 19, 2023.

¶ 9 On July 18, 2023, the defendant filed a motion for leave to submit discovery requests. The plaintiff filed an objection to the motion. The trial court denied the motion on August 14, 2023.

¶ 10 On September 18, 2023, the day before the bench trial was scheduled, Thompson filed his verified answer to the first amended complaint that denied each and every allegation of the amended complaint.

¶ 11 The trial court conducted the bench trial on September 19, 2023. Thompson was not present for the bench trial; however, his counsel was present. Each side gave a brief opening statement and then plaintiff called the only witness to testify, Robert Baer.

¶ 12    Baer testified that he was employed by Arrowwood and had been for 32 years. Baer's title is claim executive. He testified that he is responsible nationally for workers' compensation, some construction defect cases, and the tuition guard program.

¶ 13    Baer testified that the tuition guard program sold insurance coverage to lenders for coverage should a borrower default on a covered loan. If a borrower defaulted, a claim would be filed with Arrowwood, the claim would be reviewed, and if it was a valid claim, Arrowwood would pay the amount that was claimed to be owed. In exchange, Arrowwood then received ownership of the loan.

¶ 14    Next, the following colloquy relevant to this appeal occurred:

"Q. [PLAINTIFF'S COUNSEL]: Okay. Is it the ordinary course of business to get documents for such review?

A. [BAER]: Yes.

Q. And are those records kept in the ordinary course of business?

A. Yes.

[DEFENSE COUNSEL]: Let me interpose an objection, Your Honor. He can not [*sic*]—he can not [*sic*] make a business record of some other organization into a business record of Arrowwood. He can not [*sic*] testify that those other documents by other companies were made in the ordinary course of business and are a business record of Arrowwood.

THE COURT: I don't know that I disagree Mr. Duree. But I don't know that's what he's testifying to or that counsel is intending to assert. So overruled for now. You can re-raise your objection at the end of testimony.

4

[PLAINTIFF'S COUNSEL]: Your Honor, I have a case right out of the Fifth District that says everything I'm doing is proper. Do you want me to argue that now or just wait?

THE COURT: Do you have a copy of the case you want me to review? I'll take it now if you want.

* * *

THE COURT: Well, why don't we go forward with Mr. Baer's testimony and I'll allow you to re-raise an objection after I hear the totality of his testimony Mr. Duree."

Counsel for each side then agreed to stipulate that defense counsel was making a standing objection to this line of questioning, and the trial court accepted the stipulation.

¶ 15 Baer testified that Arrowwood would receive the following documents for student loans in default: the original claim documents, a record of the payments that were made, and a claim form. Baer testified that the aforementioned documents were kept in the ordinary course of business, it was the ordinary course of the business to keep those records, and Arrowwood relied on those documents.

¶ 16 Next, Baer testified regarding several exhibits. Baer testified that he was familiar with a loan provided to Thompson. Baer testified that exhibit 1 is a loan application to Citibank for a student loan. Arrowwood received this document as part of the documents "presented to [Arrowwood] as part of the claim package when the subsequent lender, Discovery [*sic*] filed their claim." Exhibit 1 contained four pages including the loan application and the terms and conditions of the loan. Page 4 of exhibit 1 was the disclosure statement that indicated the amount financed, the interest rate, and the total number of payments. Baer testified that exhibit 1 would be part of the claim package and it was kept with those records on this loan.

¶ 17    Baer identified exhibit 1-A as a request for claim reimbursement for the Thompson disbursement made on September 7, 2000. Baer testified that it would be in the regular course of business to receive this document from the lender, and that Arrowwood received exhibit 1-A in the ordinary course of Arrowwood's business, and it is part of Arrowwood's business records.

¶ 18    Baer testified that exhibit 1-C was the sale of the loan from Citibank to Discover. He testified that exhibit 1-B was a transfer of ownership from Discover Student Loans-SLC to Arrowwood. Baer testified that the loan went from Citibank to Discover and then Discover sent it to Arrowwood. He testified that the documents contained in exhibits 1-B and 1-C were received in the ordinary course of business and then became part of the business records of Arrowwood.

¶ 19    Baer testified that exhibit 1-D was an insurance certificate that would have been provided to the lender and it showed the premium paid and policy number. He testified that this would have been created in the ordinary course of business by Arrowwood or its broker or agent. He also testified that it would have been received in the ordinary course of business and made part of the business record.

¶ 20    Baer testified that the loan was disbursed in two installments, both in the amount of $8009. Next, Baer testified regarding exhibit 1-E, which he identified as the payment record of payments made on the first disbursement. Arrowwood received this document as part of the claim process. Exhibit 1-E showed the first payment being received in 2005 and the last payment recorded on November 9, 2012. He testified that it was in the ordinary course of business for Arrowwood to keep these records as part of its own records. This would have been documentation that supported the claim and the payment of the claim by Arrowwood.

¶ 21    Next, Baer testified regarding the documentation related to the second disbursement. Exhibit 2 contained the exact same loan application as for the first disbursement. Exhibit 2-A was

a request for claim reimbursement for the second disbursement. Exhibits 2-B and 2-C, like exhibits 1-B and 1-C, referenced the sale and transfer of the loan. Exhibit 2-D is the insurance certificate. Exhibit 2-E was the payment history for the second disbursement. The last payment made on the second disbursement was made on November 10, 2012. Baer testified that exhibits 2 and 2-A through 2-E were all received in the ordinary course of business for Arrowwood, it is the ordinary course of Arrowwood to have these records, and Arrowwood had then to document the claim being made by the lender for the default of the borrower.

¶ 22    Baer testified that Arrowwood paid $4594.81 for the first disbursement and $4852.72 for the second disbursement. This was paid based on the principal owed on the loan. He also testified that interest was accruing at the rate of 3.5%. Baer also testified that the contract provided that court costs and attorney fees would also be collected.

¶ 23    Baer testified that Arrowwood relied upon all of the documents that he had been shown as exhibits to pay out the insurance claims.

¶ 24    Next, defense counsel cross-examined Baer. First, Baer was cross-examined regarding the payment histories. Baer testified that the payment histories were not prepared by Arrowwood; they were documents received by Arrowwood. Baer testified that the believed the payment histories showed a combination of payments made to Citibank and Discover because the history predates the transfer of ownership but contains all of the payments. There was nothing on the documents to indicate which entries were made by Citibank and which were made by Discover.

¶ 25    Baer testified that he did not have a canceled check or similar document that would show a payment from Arrowwood to anybody. Baer testified that the transfer of ownership documents, exhibits 1-B and 2-B, would indicate payments from Arrowwood. Baer testified that these documents evidenced that Arrowwood made payments to Discover Student Loans-SLC.

7

¶ 26    Baer was then cross-examined regarding the date the payments were made; he testified that he did not know the exact date. He also did not know the exact date the documents were received by Arrowwood.

¶ 27    Baer agreed on cross-examination that no payments were ever made to Arrowwood by Thompson. He also agreed that he did not have personal knowledge that Thompson signed either of the original loan agreements. Cross-examination continued regarding the exhibits that Baer had previously reviewed and testified about in direct examination.

¶ 28    On redirect examination, Baer testified that Arrowwood had a record of making the payments on the two claims for the two disbursements. Baer testified that based on the loan application documents, exhibits 1 and 2, that Thompson received the funds specified in the loan application. The application included a school certification that was signed off on by a director of the program indicating that Thompson was attending the school and should receive the money. This concluded the presentation of testimony.

¶ 29    Plaintiff's counsel then moved for the admission of the exhibits. At which point, arguments were presented. Defense counsel first argued that the documents were not business records of Arrowwood and just because they were received by Arrowwood does not make them admissible as business records. Next, he argued that the documents do not show an assignment of the "oral obligations from, if you assume for purposes of debate, the loan agreements were allegedly signed by Saleem Thompson. *** [T]hey don't show that there was an assignment from Citibank, a State Bank to Citibank, a National Bank." Or an assignment from Citibank, a national bank, to Discover. For these reasons, defense counsel objected to the admission of the exhibits.

¶ 30    In response, plaintiff's counsel argued that the cases he tendered to the trial court support his position that it is not necessary that the person that has knowledge of the documents is the

8

person who created the documents. He cited *Northbrook Bank & Trust Co. v. 2120 Division, LLC*, 2015 IL App (1st) 133426-U (Sept. 24, 2015); however, the Rule 23 unpublished decision was withdrawn and replaced with a published opinion on December 3, 2015. Additionally, plaintiff's counsel cited *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283. Regarding the assignment argument, plaintiff's counsel argued that Arrowwood is not a collection agency and that the assignments have been testified to and documents presented. After considering the arguments of counsel and the cases cited by plaintiff, the trial court admitted all of the exhibits over the defendant's objection.

¶ 31 Plaintiff's counsel then requested that the interest, court costs, and attorney fees also be considered by the trial court. Defense counsel then argued again that the assignment documents presented did not state the consideration for the assignment and that the case should be dismissed, as had been previously argued in the motion to dismiss.

¶ 32 The trial court then made an oral pronouncement in favor of the plaintiff that was followed with a written judgment on September 19, 2023. The defendant filed a timely notice of appeal on October 6, 2023.

¶ 33                                    II. ANALYSIS

¶ 34 On appeal, the defendant alleges that the judgment entered against him should be reversed. More specifically, the defendant identifies the following issues in his opening brief:

> I. The trial court erred by entering judgment for Arrowwood Indemnity Company because the judgment was against the manifest weight of the evidence in that there was no evidence that the two student loan agreements were assigned from Citibank, a New York State Bank, to Discover Bank, a Delaware Banking Corporation, and from Discover Bank, a Delaware Banking Corporation, to Arrowwood Indemnity Company;

9

there was no evidence from which the trial court could find that Arrowwood Indemnity Company acquired the rights of the original lender by assignment (Issue I).

II. The trial court erred by entering judgment for Arrowwood Indemnity Company because the judgment is against the manifest weight of the evidence in that there was no evidence from which the trial court could have found that Arrowwood Indemnity Company or Guaranty National Insurance Company was required, under the insurance contract, to repay the loans or that either of them repaid the loans and thereby became the owners of the promissory notes that are part of the loan agreements (Issue II).

III. The trial court erred and abused its discretion by admitting into evidence Arrowwood Indemnity Company's exhibits, consisting of alleged records of Discover Bank, a Delaware Banking Corporation, Citibank, N.A., a National Banking Association, Citibank, a New York State Bank, and Discover Student Loans-SLC, over objection, because there was no evidence establishing that the alleged records of those entities were made in the regular course of business of those entities and at or near the time of the events or occurrences; the mere fact that the documents of other companies wound up in the files of Arrowwood Indemnity Company does not establish a foundation for their admission into evidence as business records; Arrowwood Indemnity Company failed to establish a submissible case without, and even with, these exhibits (Issue III).

¶ 35 We find it prudent to begin our review of this case with the last issue presented by the defendant, Issue III—whether the trial court erred in admitting Arrowwood's exhibits as business records. "A reviewing court will not disturb a trial court's decision regarding the admissibility of business records absent an abuse of discretion." *Southern Wine & Spirits of Illinois, Inc. v. Steiner*, 2014 IL App (1st) 123435, ¶ 25. "An abuse of discretion occurs only when the trial court's decision

10

is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 36 The defendant contends that Baer's testimony was insufficient to support the admission of the plaintiff's exhibits as business records. The business records exception to the hearsay rule is codified in Illinois Supreme Court Rule 236, which provides as follows:

"Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind." Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

¶ 37 During the bench trial and on appeal, the plaintiff relies on our opinion in *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, to support the admission of its exhibits under the business records exception to the hearsay rule. *Land* provides, *inter alia*, as follows: "Notably, 'Rule 236 expressly provides that lack of personal knowledge by the maker may affect the weight of the evidence but not its admissibility.' " *Id.* ¶ 12 (quoting *In re Estate of Weiland*, 338 Ill. App. 3d 585, 601 (2003)). *Land* also noted the reasoning behind the business records exception as set forth in *Kimble v. Earle M. Jorgenson Co.*:

"The theory upon which entries made in the regular course of business are admissible as an exception to the hearsay rule is that 'since their purpose is to aid in the proper transaction

11

of the business and they are useless for that purpose unless accurate, the motive for following a routine of accuracy is great and the motive to falsify nonexistent.' " *Kimble v. Earle M. Jorgenson Co.*, 358 Ill. App. 3d 400, 414 (2005) (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 803.10, at 817 (7th ed. 1999)).

¶ 38     In the present case, the trial court heard direct testimony and cross-examination testimony of Baer. Baer testified that he had worked for Arrowwood for more than 30 years and was familiar with the claim surrounding Thompson's loans. Baer testified regarding the documents that Arrowwood received after a claim was made for payment under the insurance policy and that Arrowwood relied upon the documents to process and ultimately pay the claims. "A trial court's decisions on the admissibility of evidence are entitled to deference ***." *Jefferson v. Mercy Hospital & Medical Center*, 2018 IL App (1st) 162219, ¶ 39. Upon a thorough review of the record, we cannot find that the trial court's decision to admit the plaintiff's exhibits was arbitrary, fanciful, or unreasonable. Accordingly, we affirm the trial court's admission of plaintiff's exhibits.

¶ 39     Next, turning to Issue I asserted by the defendant—whether there was evidence presented regarding the assignment of the original loans. In the defendant's opening brief, approximately two pages are used to articulate his position. However, other than citing legal authority for the applicable standard of review on this issue, the defendant fails to cite to any additional legal authority in support of his argument on this issue.

¶ 40     "A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Id.* On appeal, "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The mere allegation that the trial court's order was in error without any citation to authority to support that contention falls short of what is required under Rule 341(h)(7), "which our supreme court has stated is not a mere suggestion, but has the force of law." *In re Marriage of James*, 2018 IL App (2d) 170627, ¶ 37 (citing *Rodriquez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 353 (2006)). Accordingly, we find the defendant forfeited any arguments regarding Issue I pursuant to Illinois Supreme Court Rule 341(h)(7).

¶ 41    As to Issue II, the defendant did not raise this issue in the trial court during, or after, the bench trial. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedia, Inc.*, 169 Ill. 2d 525, 536 (1996). Therefore, we will not consider this argument on appeal due to the defendant's failure to raise this before the trial court.

¶ 42    Now turning to the ultimate issue, should the trial court's order and judgment of September 19, 2023, following a bench trial, be reversed? "The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence." *Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App (2d) 200208, ¶ 50. When sitting as the trier of fact in a bench trial, the trial court makes findings of fact and weighs all of the evidence in reaching a conclusion. *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 483-84 (2002). "When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence." *Id.* at 484. When applying this standard of review, we give great deference to the trial court's credibility determinations, and we will not substitute our judgment for that of the circuit court " 'because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses.' " *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35 (quoting *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007)). "A factual

finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on evidence." *Samour*, 224 Ill. 2d at 544. The trial court's findings and judgment will not be disturbed "if there is any evidence in the record to support such findings." *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959).

¶ 43 After determining that the evidence submitted by the plaintiff and admitted by the trial court was not an abuse of discretion, we cannot find that the trial court's reliance on that evidence resulted in an order and judgment that was against the manifest weight of the evidence. We affirm the trial court's order and judgment of September 19, 2023, in favor of the plaintiff.

¶ 44 On appeal, the plaintiff seeks attorney fees due to the additional costs of defending the appeal. The trial court's order of September 19, 2023, ordered that defendant was to pay attorney fees for the underlying litigation. We remand this matter to the trial court for a hearing on any additional attorney fees to be awarded as a result of the appeal.

¶ 45                                    III. CONCLUSION

¶ 46 For the foregoing reasons, we affirm the trial court's order and judgment of September 19, 2023. Further, we remand this matter to the trial court for a hearing on any additional attorney fees.


¶ 47 Affirmed and remanded.